```
                                                              USDC SDNY
                                                              DOCUMENT
UNITED STATES DISTRICT COURT                                  ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                                 DOC #:_____
------------------------------------------------------------X DATE FILED: June 19, 2014
                                                            :
GANGA MANTENA,                                              :
                                      Plaintiff,            :
                                                            :    13 Civ. 05300 (LGS)
              -against-                                     :
                                                            :    OPINION AND ORDER
JANET NAPOLITANO, et al.,                                   :
                                      Defendants.           :
                                                            :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Ganga Mantena seeks review of agency determinations by Defendants Jeh Johnson, Secretary of the United States Department of Homeland Security ("DHS Secretary"), Lori Scialabba, Acting Director of the United States Citizenship and Immigration Services ("USCIS Director") and Mark J. Hazuda, Director of the USCIS Nebraska Service Center,[1] alleging that their determinations violated the Administrative Procedures Act, 5 U.S.C. §§ 701-06 ("APA") and Plaintiff's constitutional rights. Defendants move to dismiss the Amended Complaint both for lack of subject matter jurisdiction and for judgment on the pleadings. Because the Court lacks subject matter jurisdiction over Plaintiff's claims under the APA and because the Amended Complaint fails to state a claim upon which relief can be granted, Defendants' motion is granted.

---

[1] The Complaint names as Defendants Janet Napolitano and Alejandro Mayorkas, who served as DHS Secretary and USCIS Director, respectively, at the time of the conduct giving rise to the Complaint. Pursuant to Fed. R. Civ. P. 25(d), Napolitano and Mayorkas have been substituted by Jeh Johnson and Lori Scialabba, the individuals currently holding the positions of DHS Secretary and USCIS Director, respectively.

**BACKGROUND**

**I.   Statutory Framework**

This case involves Plaintiff's petition for employment-based permanent legal status, commonly known as "green card status," which entails a three-step process involving submissions from both the employer and the alien employee. *See United States v. Ryan-Webster*, 353 F.3d 353, 355-56 (4th Cir. 2003) (describing administrative process for obtaining employment-based permanent legal status). First, an employer in the United States must apply to the Department of Labor ("DOL") for an Alien Labor Certification. 8 U.S.C. §§ 1182(a)(5)(A), 1153(b)(3)(C); *Ryan-Webster*, 353 F.3d at 355. In granting the Alien Labor Certification, the DOL must be satisfied that: (1) "there are not sufficient workers who are able, willing, qualified . . . and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor"; and (2) "the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1182(a)(5)(A)(i).

Second, once the Alien Labor Certification is granted, the employer must file an Alien Labor Certification along with a form I-140 Immigration Petition for Alien Worker ("I-140"), pursuant to 8 U.S.C. § 1153(b). *See* 8 C.F.R. §§ 204.5(a), (c); *see also Ryan-Webster*, 353 F.3d at 356. The I-140 constitutes a request that the alien be classified in a specified visa preference category. U.S.C. § 1153(b). If the I-140 is approved, the alien receives a "priority date," which is the date on which DOL accepted the application for Alien Labor Certification. *See* 8 U.S.C. 1153(e)(1). The priority date, in turn, determines the alien's position in the line for an immigrant visa number. *See id.* Pursuant to 8 U.S.C. § 1155, and significant for purposes of the present

action, the DHS Secretary is authorized to revoke an approved I-140 at "any time, for what he deems to be good and sufficient cause . . . ."[2]

Third, once an I-140 is approved and the alien has received an immigrant visa number, an alien who is already resident in the United States must file with USCIS an I-485 Application for Adjustment of Status to Lawful Permanent Resident ("I-485").  8 U.S.C. § 1255(a); 8 C.F.R. § 204.5(n)(1); *Ryan-Webster*, 353 F.3d at 356.  Acting pursuant to 8 U.S.C. § 1255, the Attorney General then determines whether to "adjust" the resident alien's status to that of a lawful permanent resident entitled to work within the United States.  *Ryan-Webster*, 353 F.3d at 356.  If the Attorney General determines to adjust the alien's status, the alien receives a "green card."  *Id.*

## II.     Factual and Procedural Background

Plaintiff is a native and citizen of India and has been employed as a software engineer in the United States since 2000.  Plaintiff first entered the United States on an H-1B visa petition filed by Covansys, formerly known as Complete Business Solutions, Inc.  In 2003, Plaintiff left Covansys and joined Visions Systems Group, Inc. ("VSG"), which obtained a new H-1B visa on Plaintiff's behalf.

VSG subsequently initiated the process for Plaintiff to become a lawful permanent resident of the United States by filing an application for an Alien Labor Certification.  On or around January 19, 2006, VSG obtained approval of the Alien Labor Certification.  On or around September 26, 2006, VSG filed an I-140 with USCIS, and on or around November 21, 2006, the I-140 was approved.  On or around July 24, 2007, Plaintiff filed an I-485.  On or around December 16, 2009, Plaintiff notified USCIS that she had changed employers and was working at

---

[2] 8 U.S.C. § 1155 specifies that the DHS Secretary may revoke a petition "approved by him under section 1154 . . . ."  In turn, section 1154 covers petitions to classify aliens under section 1153(b), including I-140 petitions.  8 U.S.C. § 1154(a)(1)(F).

CNC Consulting, Inc.  Plaintiff's I-485 remained pending and did not require modification because she had "ported" the work authorization obtained from her former employer to her new employer.[3]

On or about October 7, 2010, the president of VSG pleaded guilty to mail fraud in connection with a petition filed on behalf of a different VSG employee, who was unknown to Plaintiff.  Subsequently, USCIS decided to revoke all petitions filed by VSG, concluding that all such cases "may be fraudulent."  On or around June 28, 2012, USCIS sent VSG a Notice of Intent to Revoke the I-140 obtained for Plaintiff.  VSG was no longer in business and did not respond to the notice.  USCIS did not send the notice to Plaintiff.  On or around October 19, 2012, USCIS revoked the I-140 for failure to respond to the notice.  USCIS did not notify Plaintiff of the I-140 revocation.  On or around November 20, 2012, USCIS denied Plaintiff's I-485 Application because the I-140 filed on her behalf had been revoked.  Between December 2012 and September 2013, Plaintiff filed three successive motions to reopen/reconsider the I-485 denial.  USCIS denied all three motions.

On or about October 11, 2013, Plaintiff filed the Amended Complaint in this action. Count One of the Amended Complaint seeks review of the I-140 revocation and the I-485 denial, alleging that the revocation and denial and subsequent decisions affirming the revocation and denial were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "contrary to constitutional right, power, privileges, or immunity," in violation of

---

[3] The "portability" provisions of the American Competitiveness in the Twenty First Century Act of 2000, Pub.L. 106-313, provide that an approved immigration petition will remain valid for the purpose of an application for adjustment of status when the alien changes jobs if two conditions are met: (1) the adjustment of status application has remained unadjudicated for more than 180 days; and (2) the alien's new employment is the same or similar to the job for which the visa petition was approved. *Lee v. U.S. Citizenship and Immigration Servs.*, 592 F.3d 612, 617 (4th Cir. 2010) (internal quotation marks and citation omitted).

§§ 706(2)(A)-(B) of the APA.[4] Count Two of the Amended Complaint alleges that Plaintiff was denied a meaningful opportunity to challenge the basis of the I-140 revocation, the I-185 denial and the "cutting off" of her related employment authorization and travel permissions, in violation of Plaintiff's substantive due process rights. Finally, Count Three of the Amended Complaint requests attorneys' fees pursuant to 28 U.S.C. § 2412(d) and 5 U.S.C. § 504.

On February 20, 2014, Defendants filed their motion to dismiss. On March 24, 2014, Plaintiff filed her opposition, and, without seeking the Court's leave as directed in the Court's Individual Rules, also filed a motion for summary judgment. On April 3, 2014, Defendants filed their reply without addressing Plaintiff's summary judgment claims, and requested that the Court hold in abeyance its consideration of Plaintiff's motion for summary judgment pending a decision on the motion to dismiss. On April 18, 2014, Plaintiff's motion for summary judgment was denied as moot pending consideration of the motion to dismiss. Accordingly, the present opinion does not consider Plaintiff's summary judgment arguments.

## DISCUSSION

Defendants seek dismissal of the Amended Complaint in its entirety. In respect of the claims pertaining to the I-140 revocation under Count One ("I-140 Claims"), Defendants assert

---

[4] Count One lists numerous procedural and legal errors, including: (i) failure to base the I-140 revocation on "good and sufficient cause" as required by the applicable statute, 8 U.S.C. § 1155; (ii) failure to consider Plaintiff's argument that she was entitled to receive notice of the intent to revoke the I-140 application filed by VSG on her behalf; (iii) failure to consider Plaintiff's legal arguments in her challenges to the I-485 denial; (iv) failure to consider the arguments and evidence adduced by Plaintiff, in violation of 8 C.F.R. § 103.2(b)(16)(i), which requires that USCIS permit an applicant or petitioner to inspect the record of the proceeding which constitutes the basis for USCIS's decision and provide the applicant or petitioner with the opportunity to rebut any "derogatory information" unknown to the applicant or petitioner which will serve as the basis for an adverse decision; (v) violation of the "portability" provisions established by the American Competitiveness in the Twenty First Century Act of 2000 and violation of "the Agency's own regulations and instructions" relating to continuing eligibility of benefits where an I-140 is revoked; and (vi) violation of agency regulations governing standing.

two arguments. First, they contend that the Court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Second, they assert that Plaintiff lacks standing to challenge the I-140 revocation. Because the Court lacks subject matter jurisdiction to decide the I-140 Claims, Defendants' standing argument is not addressed. In respect of the claims relating to the I-485 denial under Count One ("I-485 Claims"), Defendants assert that the Amended Complaint fails to state a claim upon which relief can be granted because the I-485 denial was based on Plaintiff's lack of a valid I-140. Because the Court concludes, *sua sponte*, that it also lacks subject matter jurisdiction over the I-485 Claims, Defendants' argument is not addressed. In respect of Count Two, Defendants argue, correctly, that the Amended Complaint fails to state a claim for violation of Plaintiff's due process rights. As to Count Three, requesting attorneys' fees, Defendants' submission is silent. That claim, however, is dependent on the viability of the claims under Counts One and Two, and accordingly is dismissed.

## III. Dismissal of Count One for Lack of Subject Matter Jurisdiction

### A. Standard under Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a claim when a federal court lacks subject matter jurisdiction. "Dismissal for lack of subject matter jurisdiction is proper when the district court lacks the statutory or constitutional power to adjudicate a case." *Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013) (internal quotation marks and citation omitted). In defending against a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the court's jurisdiction by a preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A court generally must accept the material factual allegations in the complaint as true, but need not draw all inferences in the plaintiff's favor. *Sokolowski v. Metro. Transp. Auth.*, 849 F. Supp. 2d 412, 414

(S.D.N.Y. 2012), *aff'd*, 723 F.3d 187 (2d Cir. 2013); *see U.S. Airlines Pilots Ass'n ex rel. Cleary v. U.S. Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) ("[N]o presumptive truthfulness attaches to the complaint's jurisdictional allegations") (internal quotation marks and citation omitted).

### B.     The I-140 Claims

The plain language of 8 U.S.C. § 1155 specifies that revocation decisions under that statute are discretionary.  Consequently, the Court is without jurisdiction to review the I-140 revocation in this case, and the claims pertaining to that decision must be dismissed for lack of subject matter jurisdiction.

Section 1252(a)(2)(B) of Title 8 expressly limits the authority of federal courts to review two categories of discretionary immigration-related decisions.  The first category consists of decisions made pursuant to specified statutes.  8 U.S.C. § 1252(a)(2)(B)(i).  The second category, relevant for purposes of a revocation decision pursuant to § 1155, consists of "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ."  8 U.S.C. § 1252(a)(2)(B)(ii).  The DHS Secretary is authorized to revoke an I-140 pursuant to 8 U.S.C. § 1155, providing that "[t]he Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title."[5]  Section 1155 falls within the "subchapter" referred to in Section 1252(a)(2)(B).  *Guyadin v. Gonzales*, 449 F.3d 465, 468 (2d Cir. 2006) ("The phrase 'this subchapter' refers to subchapter II of Chapter 12 of Title 8 of the

---

[5] As described above, § 1154 in turn refers to § 1153(b), which covers I-140 petitions.  *Supra* n.2.

7

United States Code, which includes §§ 1151-1381."). The availability of judicial review over a revocation decision pursuant to § 1155 accordingly turns on whether the text of that statute is "specified" to be "in . . . [the DHS Secretary's] discretion" within the meaning of 8 U.S.C. § 1252(a)(2)(B)(ii).

On a plain reading of § 1155, it is clear that a revocation decision under that statute is specified to be discretionary and is therefore immune from judicial review. The phrase "at any time" empowers the DHS Secretary with temporal discretion, while the phrase "what he *deems* to be good and sufficient cause" indicates that the standard to be employed by the Secretary is within his discretion. (Emphasis added). *Accord Mehanna v. Dedvukaj*, No. 09-14510, 2010 WL 4940016, at *5 (E.D. Mich. Nov. 30, 2010) ("[T]he decision of what constitutes good and sufficient cause appears to be wholly within the Secretary's discretion, as well, because it is what he 'deems' it to be. The term 'deem' is not defined in the INA . . . but the common meaning of 'deem' is 'to consider, think, or judge.'").

This plain reading is consistent with *Nethagani v. Mukasey*, 532 F.3d 150 (2d Cir. 2008), where the Second Circuit elucidated interpretative principles for determining whether Congress intended a statute to confer discretion within the meaning of 8 U.S.C. § 1252. In *Nethagani*, the Second Circuit addressed whether 8 U.S.C. § 1252 stripped the federal courts of jurisdiction to review an agency decision that the plaintiff was ineligible for asylum and withholding of removal under 8 U.S.C. §§ 1158 and 1231 because he had been convicted of a "particularly serious crime." *Id.* at 153. The court reasoned that where the statute in question "authorizes the Attorney General to make a determination, but lacks additional language specifically rendering that determination to be within his discretion (*e.g.*, 'in the discretion of the Attorney General,' 'to the satisfaction of the Attorney General,' etc.), the decision is not one that is 'specified . . . to be in

8

the discretion of the Attorney General' for purposes of § 1252(a)(2)(B)(ii)." *Id.* at 154-55. Because the two statutes in question in *Nethagani* merely authorized "the Attorney General . . . to 'determine[] or decide[ ]'" whether the alien was convicted of a serious crime, without additional text "specifically rendering that determination to be within [the Attorney General's] discretion," the Second Circuit found that 8 U.S.C. § 1252 did not strip the courts of jurisdiction to review the Attorney General's decisions under those two statutes. *Id.* at 154-55 (first and second alterations in original).

In contrast, the text of § 1155 not only permits the DHS Secretary to make a decision as to whether to revoke an immigration petition, but also permits the Secretary to do so "at any time" and for whatever he or she "deems" to be "good and sufficient cause." This language is sufficiently similar to the phrases "to the satisfaction of the Attorney General" and "in the discretion of the Attorney General" supplied by the Second Circuit as examples of discretion-conferring language.

Dicta in *Firstland Int'l Inc. v. INS*, 377 F.3d 127 (2d Cir. 2004), further supports the conclusion that § 1252 divests the courts of jurisdiction to review revocation decisions pursuant to § 1155. In *Firstland*, the Second Circuit considered whether § 1252 precluded review of a revocation decision under § 1155 where the revocation decision did not comply with a notice requirement in § 1155 that has since been repealed. 377 F.3d at 130; *see also* Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. 108-458 § 5304(c), 118 Stat. 3736 (repealing notice requirement). The Second Circuit concluded that "*the substance of the decision that there should be a revocation is committed to the discretion of the Attorney General*, [although] Section 1155 establishes mandatory notice requirements that must be met in order for the revocation to be effective, and courts retain jurisdiction to review whether those requirements

9

have been met." *Firstland*, 377 F.3d at 131 (emphasis added).  Because the Government had not complied with the notice requirement before issuing its revocation decision, the Second Circuit vacated the district court's decision holding that it had no jurisdiction to review whether the Government had met the notice requirement prior to issuing the § 1155 revocation decision.  *Id.* at 132.  Here, unlike the facts in *Firstland*, the notice requirement is not at issue; rather, the inquiry concerns "the substance of the decision that there should be a revocation."  *Firstland* dictates that this decision is discretionary and accordingly immune from judicial review.

Six of the seven circuit courts that have considered the issue have reached the same conclusion.  *See Karpeeva v. U.S. Dep't of Homeland Sec. Citizenship & Immigration Servs. ex rel. DHS Sec'y*, 432 F. App'x 919, 925 (11th Cir. 2011) ("Given the statutory discretion conferred upon the Secretary to revoke approved visa petitions, we agree with the other circuits that have concluded that § 1252(a)(2)(B) precludes judicial review of visa revocation decisions made pursuant to § 1155."); *Green v. Napolitano,* 627 F.3d 1341, 1344-46 (10th Cir. 2010) ("[A] visa revocation under § 1155 is a discretionary decision subject to the jurisdiction-stripping provisions of § 1252(a)(2)(B)(ii)."); *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009) ("Focusing on the plain language of § 1155—the Secretary 'may' revoke an I–140 approval 'at any time, for what he deems to be good and sufficient cause'—three circuits have held that § 1155 revocations are actions 'specified [by statute] to be in the discretion of . . . the Secretary' within the meaning of § 1252(a)(2)(B)(ii), and therefore not subject to judicial review.  Like the district court, we agree.") (internal citations omitted); *Ghanem v. Upchurch*, 481 F.3d 222, 224-25 (5th Cir.  2007) ("The statutory language [of § 1155] indicates that the decision is left to the discretion of the Secretary."); *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 205 (3d Cir. 2006) ("[W]e have no difficulty concluding that the decision to revoke an approved visa petition pursuant to 8 U.S.C.

§ 1155 is left to the discretion of the Secretary of Homeland Security.  And so, pursuant to § 1252(a)(2)(B)(ii), the District Court correctly held that it lacked jurisdiction to review this administrative decision."); *El-Khader v. Monica*, 366 F.3d 562, 567 (7th Cir. 2004) ("[I]n our opinion, the discretionary nature of the decision is apparent from the plain language of [§ 1155].").

The Ninth Circuit is the only circuit court to have reached a contrary result.  In *ANA International, Inc. v. Way*, 393 F.3d 886 (9th Cir. 2004), the court held that the phrase "good and sufficient cause . . . constitutes a legal standard the meaning of which we retain jurisdiction to clarify."  *Id.* at 894.  In a persuasive dissent, Judge Tallman asserted that the majority's decision "disregard[ed] binding precedent from this circuit while creating a conflict with other circuits, conflict[ed] with congressional intent in stripping judicial review over certain immigration decisions, and result[ed] in an unwarranted expansion of federal jurisdiction into the minutiae of visa administration at a time when we are awash in immigration cases."  *Id.* at 895.  Judge Tallman further concluded that "[a] common sense reading of the language of § 1155, in conjunction with § 1252(a)(2)(B)(ii), leads ineluctably to the conclusion that the Attorney General's visa revocation decisions are discretionary."  *Id.* at 896.

Plaintiff asserts that the Court nevertheless has jurisdiction over her claims on account of 8 U.S.C. § 1252(a)(2)(D), which provides for an exception to the jurisdictional bar of § 1252(a)(2)(B)(ii) for claims that an agency determination involved "legal error and Constitutional violations."  The provision Plaintiff invokes, however, is not applicable to a district court's jurisdiction.  Rather, it bestows jurisdiction on appellate courts over certain claims raised on appeal of a final order of removal as follows:  "Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates

11

judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed *with an appropriate court of appeals* in accordance with this section." 8 U.S.C. § 1252(a)(2)(D) (emphasis added). Accordingly, Plaintiff's claims of Constitutional violation and legal error may not be considered here. *See Green*, 627 F.3d at 1346-47; *Jilin*, 447 F.3d at 206 n.16.

Plaintiff also contends that the Court retains jurisdiction over her claims pursuant to the APA. Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993) (quoting 5 U.S.C. § 702). Judicial review under the APA, however, is limited "to the extent that . . . statutes preclude judicial review." 5 U.S.C. § 701(a)(1). As concluded above, 8 U.S.C. § 1252(a)(2)(B)(ii) is a statute that "preclude[s] judicial review," and accordingly, jurisdiction under the APA is lacking. *See Jaskiewicz v. Dep't of Homeland Security et al.*, No. 06 CV 3770, 2006 WL 3431191, at *3 (S.D.N.Y. Nov. 29, 2006) ("[T]he APA does not provide a basis for jurisdiction to challenge any agency action that 'is committed to agency discretion by law'. . . . The APA does not, therefore, create jurisdiction over [plaintiff's] claim to the extent it seeks review of a discretionary decision.").

For the foregoing reasons, the I-140 Claims are dismissed.

### C. The I-485 Claims

Neither Party contests subject matter jurisdiction over the I-485 Claims. "When a requirement goes to subject matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 132 S.Ct. 641, 648

(2012) (citation omitted).  Because the Court lacks subject matter jurisdiction over the I-485 Claims, those claims also must be dismissed.

A decision to deny an I-485 is governed by 8 U.S.C. § 1255, providing, in relevant part:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

Unlike § 1155, § 1255 falls within the category of discretionary decisions explicitly exempted from judicial review by 8 U.S.C. § 1252, which states in pertinent part:  "[N]o court shall have jurisdiction to review-- (i) any judgment regarding the granting of relief under section . . . 1255 of this title . . . ."  8 U.S.C. § 1252(a)(2)(B)(i).  This provision "eliminates district court jurisdiction to review the denial of an I-485 application."  *Ruiz v. Mukasey*, 552 F.3d 269, 275 n.4 (2d Cir. 2009).  Accordingly, the Court lacks jurisdiction over the I-485 Claims.

## IV. Dismissal of Counts Two and Three for Failure to State a Claim Upon Which Relief Can Be Granted

### A. Standard under Fed. R. Civ. P. 12(c)

The Court reviews motions under Fed. R. Civ. P. 12(c) for judgment on the pleadings under the same standard as Fed. R. Civ. P. 12(b)(6) motions to dismiss.  *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).  Therefore, "[t]o survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).  The Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the nonmoving party.  *Hayden*, 594 F.3d at 157 n.4.  A complaint does not

13

"suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  Rule 8 of the Federal Rules of Civil Procedure "requires factual allegations that are sufficient to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 846 (2013) (quoting *Twombly*, 550 U.S. at 555).

B.     **Count Two Due Process Claim**

Defendants move for dismissal of Count Two of the Amended Complaint, asserting that Plaintiff lacks any liberty or property rights implicating due process.  Because an alien does not possess any inherent property or liberty right in an immigration visa, Count Two of the Amended Complaint is dismissed.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law."  U.S. CONST. amend V.  To succeed on a due process claim, however, a plaintiff must show that there was a cognizable liberty or property interest at stake.  *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976).  An alien does not have a constitutional property right to an immigrant visa.  *Azizi v. Thornburgh,* 908 F.2d 1130, 1134 (2d Cir. 1990) (plaintiffs had no right to immigrant visa and accordingly did "not have the requisite property interest necessary to prevail on their due process challenge"); *Jaskiewicz*, 2006 WL 3431191, at *4 (holding that plaintiff's due process claim challenging denial of adjustment of status did not present a federal constitutional question because "[t]here is no due process right at stake here since aliens do not have an 'inherent property interest' in an immigrant visa . . . .").  Likewise, an alien does not have a liberty interest in an immigrant visa.  *Vladagina v. Ashcroft*, No. 00 CIV. 9456, 2002 WL 1162426, at *3 n.6 (S.D.N.Y. Apr. 8, 2002)

("Petitioner has not alleged a property or liberty interest in an immigrant visa, and it is clear that neither exists."). Accordingly, Count Two of the Amended Complaint is dismissed.

### C. Count Three Claim for Attorneys' Fees

Plaintiff seeks attorneys' fees pursuant to two provisions of the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412(d). Both provisions award fees and expenses to "a prevailing party" under certain circumstances. *See generally Jeroski v. Fed. Mine Safety and Health Review Comm'n*, 697 F.3d 651 (7th Cir. 2012). Because Plaintiff is not a prevailing party, the claim for attorneys' fees is dismissed.

### **CONCLUSION**

For the foregoing reasons, the Amended Complaint in this action is dismissed in its entirety.

Dated: June 19, 2014
New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE